1  LAURA E. DUFFY
   United States Attorney
2  WARREN J. WILLIAMS
   Special Assistant United States Attorney
3  California State Bar No. 270622
   880 Front Street, Room 6293
4  San Diego, California 92101-8893
   Telephone: (619) 546-9592
5  Facsimile:  (619) 235-2757

6  Attorneys for Plaintiff
   United States of America

7

              UNITED STATES DISTRICT COURT
8
            SOUTHERN DISTRICT OF CALIFORNIA
9

10
   UNITED STATES OF AMERICA,        )   Case No.  11CR3248-BTM
11                                   )
                                     )   UNITED STATES' RESPONSE AND
12                                   )   OPPOSITION TO DEFENDANT
                                     )   CABRERA'S MOTION FOR NEW TRIAL
13                 Plaintiff,        )
                                     )   TOGETHER WITH STATEMENT OF
14         v.                        )   FACTS; MEMORANDUM OF POINTS
                                     )   AND AUTHORITIES
15                                   )
                                     )   Date:        April 20, 2012
16  ARMANDO CABRERA PEREZ,           )   Time:        2:00 p.m.
                                     )   Courtroom:   15 (5th Floor)
17                 Defendant.        )
                                     )
18                                   )
                                     )
19  _____ )

20         COMES NOW the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

21  Laura E. Duffy, United States Attorney, and Warren J. Williams, Special Assistant United States

22  Attorney, and hereby files its Response and Opposition to Defendant Cabrera's Motion for New Trial.

23  This opposition is based upon the files and records of the case together with the attached statement of

24  facts and memorandum of points and authorities.

25  //

26  //

27  //

28  //

# I.

## STATEMENT OF FACTS

### A.   Offense Conduct

On May 8, 2011, at approximately 4:45 p.m., defendant Armando Cabrera Perez ("Defendant") made application for admission to the United States from Mexico at the San Ysidro Port of Entry via pedestrian primary.   Defendant presented a photocopy of a birth certificate and a California identification card, both bearing the name of Vidal Alamilla, to Customs and Border Protection (CBP) Officer Joseph Tarbona. CBP Officer Tarbona asked Defendant where he was going, and he replied that he was going to San Diego.  CBP Officer Tarbona noted that Defendant did not appear to be the person in the photograph on the identification card Defendant presented, so he confronted Defendant, who then claimed to be Carlos Hernandez with a date of birth of March 24, 1978.  CBP Officer Tarbona escorted Defendant to the Port Enforcement Team (PET) inspection area.  Also recovered from Defendant were two other identification documents of Vidal Alamilla: a social security card and a federal inmate identification card.

In the PET inspection area, CBP Officer Mario Ibarra took Defendant's fingerprints and determined that Defendant's true name was Armando Cabrera-Perez and that he was a previously deported alien with a criminal history.

From January 5, 2010, until February 8, 2010, Defendant and Vidal Alamilla were both housed at FCI Greenville in Illinois.

# II.

## STATEMENT OF THE CASE

A grand jury returned a one-count indictment against Defendant on July 27, 2011, charging him with attempted entry after deportation, in violation of Title 8, United States Code, Section 1326(a).  A superseding indictment was returned on August 3, 2011, additionally charging Defendant with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A.

On September 12, 2011, Defendant filed a motion to dismiss the superseding indictment due to invalid deportation.  On October 3, 2011, Frank Morell was appointed as counsel for Defendant after

1    a conflict was raised by his previous counsel, Trent Packer and Sara Brin of Federal Defenders, Inc.

2    On November 22, 2011, the Court denied the motion to dismiss due to invalid deportation.

3          Trial commenced on November 28, 2011, and lasted four days.  On December 2, 2011, the jury

4    returned a unanimous verdict of guilty as to both counts of the Superseding Indictment: attempted entry

5    after deportation and aggravated identity theft.  Immediately following a guilty verdict, Debra Ann

6    DiIorio was appointed as counsel for Defendant, and she filed a Motion for New Trial on April 2, 2012.

7                                               **III.**

8                                          **<u>ARGUMENT</u>**

9          **A.     <u>Summary of Argument</u>**

10         By November 2011, Defendant was a man who was desperately unhappy with his available

11    choices.  He had previously been convicted of a 1326 offence in Arizona for which he had received a

12    sentence of 41 months. [PSR 3.]  In the instant case, he had turned down multiple settlement offers from

13    the Government, and the Grand Jury had returned a Superseding Indictment which included an

14    aggravated identify theft count - a count which would add a consecutive 2-year sentence to Defendant's

15    already significant 1326 guidelines sentence.  Defendant believed the Government's position to be

16    unfair, and he wanted a good offer. ["All I ask is to give me, get me a good plea. . . This is ridiculous.

17    It is not right."   TR 756-57.]

18         Defendant also did not want to go to trial. ["I don't want to go to trial."  RT 74; "They forced

19    me.  I didn't ask for a trial."  RT 319.]  According to Defendant (and consistent with the state of the

20    evidence), Defendant's attorney had told him that he had no defense and he was going to be convicted

21    after trial. ["They told me - - my attorney told me I'm going to lose this trial."  RT 319.] If the trial were

22    going to go forward, he didn't want to be present. ["I can't be here, your Honor.  I can['t] be here, seeing

23    how these people are going to take my life away, for too many years." [RT 758.]

24         Defendant was frustrated, angry and desperate to avoid a trial.  He refused to put on street

25    clothes. [RT 65-67; 300-302.]  He repeatedly threatened to speak out in the presence of the jury [RT 51-

26    52, 192], and eventually he did [RT 742-43]. Defendant certainly was frustrated, angry and

27    desperate–even obstructionist.   But he was <u>not</u> was incompetent.

28

1    Defendant has had five attorneys from May 2011 through the present, all of whom are excellent

2    attorneys.  Michael Littman represented Defendant from the time of his arrest through the pre-indictment

3    stage of the proceedings.   Trent Packer and Sara Brin of Federal Defenders of San Diego, Inc.,

4    represented Defendant next and filed a 1326(d) motion on his behalf, before discovering a conflict of

5    interest.  Frank Morell represented Defendant through the hearings on the 1326(d) motion and through

6    trial.   Debra DiIorio has represented Defendant for the past four months.   Yet Defendant has not

7    submitted one declaration from any of those attorneys supporting this motion.  It is certainly probative

8    that not one of those attorneys has brought forward any information or evidence to suggest Defendant

9    suffers from a mental disease or defect.   Furthermore, no declarations have been provided by any of

10   those attorneys to support the claim that Defendant was unable to understand the nature and

11   consequences of the proceedings against him or to assist in his defense.

12   Defendant argues that he should be granted a new trial because the Court erred by not conducting

13   a competency hearing upon observation of his actions and his statements prior to and during trial.  In

14   support of this argument, Defendant points to instances during the proceedings in which he requested

15   new counsel and expressed his displeasure with Mr. Morell's representation and with his mandatory

16   presence for trial.  Defendant also argues that the issue of competency was called to the Court's attention

17   when Mr. Morell requested an examination of Defendant during the proceedings.   However,

18   Defendant's motion for new trial based upon Defendant's incompetency must be denied because (1)

19   Defendant has not offered any evidence to suggest that he suffered from a mental disease or defect at

20   the time of trial, or at any time in his life for that matter; and (2) Defendant's discourse and participation

21   during the week of trial would not have a given a reasonable judge a basis to doubt his ability to

22   understand the courtroom proceedings and assist in his defense.  For the reasons set forth more fully

23   below, Defendant's request for a new trial is without merit and should be denied.

24   **B.    Legal Standard**

25   "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the

26   interest of justice so requires." Fed. R. Crim. P. 33(a).  A motion for a new trial lies entirely within the

27   discretion of the trial judge.  United States v. McGuire, 423 F.2d 1216 (9th Cir. 1970). "A motion for

28   new trial . . . is reviewed for abuse of discretion on appeal, and '[a] district court's power to grant a

motion for new trial is much broader than its power to grant a motion for judgment of acquittal.'" <u>United States v. Kellington</u>, 217 F.3d 1084, 1094-95 (9th Cir. 2000)(quoting <u>United States v. Alston</u>, 974 F.2d 1206, 1211 (9th Cir. 1992)).  Motions for a new trial, however, should be granted with caution.  <u>U.S. v. McClellon</u>, 578 F.3d 846, 857 (8th Cir. 2009), cert. denied, 130 S.Ct. 1106 (2010).  New trials granted pursuant to Rule 33 are generally disfavored regardless of whether based on newly discovered evidence or other grounds.  <u>U.S. v. Wall</u>, 389 F.3d 457, 474 (5th Cir. 2004).  A judgment will be affirmed under the harmless error doctrine unless a substantial right of the defendant's was affected.  <u>U.S. v. Valencia</u>, 600 F.3d 389 (5th Cir. 2010), cert. denied, 2010 WL 2771432 (U.S. 2010).

The matter of a defendant's competence to stand trial is governed by Title 18, Section 4241 of the United States Code:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant.  The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Title 18 United States Code, Section 4241(a).

The conviction of an accused person while legally incompetent to stand trial is a clear violation of the constitutional guarantee of due process.  <u>Pate v. Robinson</u>, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966).  A <u>Pate</u> hearing is not required, however, absent a "substantial" or "bona fide" doubt of competency.  <u>Hernandez v. Ylst</u>, 930 F.2d 714, 716 (9th Cir. 1991).  In determining whether or not there is substantial doubt, "the trial judge must evaluate all the evidence." <u>Id.</u> (quoting <u>Chavez v. United States</u>, 656 F.2d 512, 518 (9th Cir. 1981)).

"A defendant is competent if 'he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,'" and "'has a rational as well as factual understanding of the proceedings against him.'" <u>Blazak v. Ricketts</u>, 1 F.3d 891, 894 (9th Cir.1993) (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)); <u>Godinez v. Moran</u>, 509 U.S. 389, 396, 113 S.Ct. 2680, 2686, 125 L.Ed.2d 321 (1993).  "Competency requires 'the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping to prepare an effective

1   defense.'" Hoffman v. Arave, 455 F.3d 926, 937 (9th Cir.2006) (overruled on other grounds, Arave v.

2   Hoffman, 552 U.S. 117, 128 S.Ct. 749, 169 L.Ed.2d 580 (2008)) (quoting Odle v. Woodford, 238 F.3d

3   1084, 1089 (9th Cir.2001) (citing Dusky, 362 U.S. at 402)). In addition, competency "requires an

4   understanding of the factual basis of the proceedings," and not the "mastery of technical legal

5   knowledge." Id. at 938 (emphasis in original).    On appeal, the applicable standard is "whether a

6   reasonable judge . . . should have experienced doubt with respect to competency to stand trial." de

7   Kaplany v. Enomoto, 540 F.2d 975, 983 (9th Cir. 1976).

8       **C.    The Competency Issue Was Raised at Trial And Properly Denied**

9       On the first day of trial, Defendant refused to dress in street clothes, falsely claiming that the

10   pants Mr. Morell had provided were too large. [RT 65-67, 92.]  When this did not stop his trial from

11   proceeding, he tried to fire his attorney.  The Court engaged Defendant in an extended conversation on

12   the new counsel request.  The dialogue was so extensive it filled twenty-two transcripts pages.  [TR 70-

13   92.] After the resolution of that issue, Mr. Morell indicated that he was at a loss to explain Defendant's

14   behavior.  In what appears at best to be an afterthought and at worst to be a verbal throwing up of his

15   hands, Mr. Morell made a reluctant request for a competency examination under 18 U.S.C. § 4241.

16       **Mr. Morell**: Your Honor, at this point in time I'm at a loss to explain this behavior
        except that that's pretty much the way he has behaved with me when I have gone to see
17       him.  Reluctantly I would ask the court to perhaps have an observation of the defendant
        under 4241.  At this point, I just don't know what to make of it . . . it seems to be the
18       heart of the situation that he simply does not understand or <u>does not wish to understand
        the proceedings</u>.

19
        And I have attempted to open up dialogue with him regarding testifying and other things,
20       and the same theme recurs and recurs, recurs, basically, and he gets angry and he gets
        angry at me, and I don't understand why he is so angry at me.  In essence in the case,
21       having come in on the trial, on the eve of trial or the same day of trial, I'm just a
        messenger essentially for what had gone on before with the other two attorneys, so I
22       don't know.

23       Your Honor, I don't know how to explain this.  This is the first time in my life that I
        have had this experience where a person simply will not cooperate in a trial.[1]
24
25   [RT 116-17 (emphasis added).]  The Court observed that it is not uncommon in 1326 cases for

26   defendants to react as Defendant had reacted to their unhappiness with what they perceive as the

27   unfairness of their situations:

28       _____
        [1] Mr. Morell did not describe Defendant's behavior as paranoid, as suggested by Defendant at
        page 2, line 16 of the instant motion.

                                        6                         11CR3248-BTM

1   **The Court**: It happens.  This is not the first time I have had this situation.  It happens.
2   And I think it's of concern to the people who are charged with 1326's because they sense
    that there is some injustice in them getting more time, so much time under the law for
3   just coming back or attempting to come back into the United States.  It's kind of a street
    sense of their feeling of unfairness and I understand that.  And I have been doing this
4   long enough to see it on multiple occasions.  And this is a situation where your client is
    just unhappy with his situation and I understand that and respect that, but the
5   proceedings have to go on.

6   [RT 117-118.]  In response to the Court's assessment that Defendant was "unhappy with his situation,"

7   Mr. Morell agreed with the Court:

8   **Mr. Morell**: I concur.

9   [RT 118.]

10  The Court continued and made a finding that there was no reason to believe that a competency

11  examination was necessary:

12  **The Court**: And I see nothing here to indicate that he is not competent.  He has been
    very rational.  I mean, he doesn't like his situation.  He doesn't like the amount of time
13  that he is facing.  If I were in his shoes I wouldn't like that either.  But he has done
    nothing to me to indicate, nor have you indicated any evidence to me to indicate, that he
14  may be suffering from a mental disease or defect.  There has been no prior issues that I
    am aware of that have been raised.  There is nothing to indicate that he is not competent.
15  He seems to recall conversations that occurred in some respect.  He was focusing on the
    1326(d).  The fact that he senses, in his opinion, that this proceeding is unfair to him is
16  something that I understand, but I'm looking at it from a different perspective.  But I
    don't believe that there is any evidence that he is not competent.
17
    If he chooses not to assist you, because he thinks the proceedings are unfair, that's a
18  decision that he is making and he is competent and capable of proceeding here.  I
    discourage him from not assisting you, but I understand his concern.
19

20  [TR 118-19.]

21  The Court had an opportunity to fully observe Defendant and engage in a lengthy dialogue with

22  him before the competency issue was raised.  The Court considered the defense motion for a

23  competency hearing and addressed himself to the relevant issues of mental disease and defect, ability

24  to understand the proceedings and ability to assist in the defense before making a finding that a hearing

25  was not warranted.  That decision was carefully considered and is supported by the record.

26  //

27  //

28  //

1.    **There is No Evidence Defendant Suffers from a Mental Disease or Defect**

Defendant has offered no evidence to suggest that he suffered from a mental disease or defect at any time prior to or during his trial. Specifically, Defendant has provided no declarations from counsel or any reports (recent or historical) to suggest that suffers or has suffered from any mental disease or defect. In the only documentation that touches on his mental and emotional health, Defendant's Presentence Report, filed April 10, 2012, the Probation Officer noted that in the prior presentence report from Defendant's 2008 Arizona conviction, the "defendant said he was in good mental health."[2] [PSR 15.] As this Court noted:

> But [Defendant] has done nothing to me to indicate, nor have you [Mr. Morell] indicated any evidence to me to indicate, that he may be suffering from a mental disease or defect. There has been no prior issues that I am aware of that have been raised.

[RT 118.]

2.    **The Court Properly Determined Defendant Was Able to Understand the Proceedings and Assist in His Defense**

In addition to exhibiting no mental disease or defect, the record also reflects that Defendant was able to understand the nature and consequences of the proceedings against him and even assist in his defense to the extent he chose to. Over the course of his trial, Defendant made a number of statements on the record regarding his defense and the quality of Mr. Morell's representation, all of which suggested that he was actively following and involved in his case, and that he had a relatively sophisticated appreciation of the subject matter. Furthermore, in context, it appears that Defendant's episodes of acting out in trial–refusing to dress in street clothes, verbally protesting the proceeding in front of the jury–were strategically calculated to achieve his stated goals of not having a trial, or at least not being present for it.

An instructive example of Defendant's ability to understand the proceedings and participate in his defense can be found in the lucid and articulate way in which he endeavored to obtain new counsel. In his request for new counsel, he laid out specific bases for it and articulated them in a thoughtful manner. Specifically, he articulated his concern about getting a better plea offer:

---

[2] The Probation Officer was unable to comment as to his current mental and emotional health because Defendant declined to participate in the presentence interview upon the advice of his counsel. [PSR 3.]

**The Defendant**:  The reason I want a new attorney is because Mr. Morell told me that he was going to reduce the felony offense from Arizona down to a misdemeanor.  My wife was working on that.  And he told me to tell her not to do it because he was going to do it. [3]  That's the reason.  I just want a good deal to be able to be finished with this.

[RT 71.]

And he later reiterated his desire for a better deal:

**The Defendant**:  Yes, but the truth is, I mean, I don't want to go to trial and this is what they're doing.  It's not fair, you know.  I know that this is going to bring more consequences, more time.  If they would give me a good deal I would sign it and we would be finished.

[RT 74.]

When the Court asked if there was any other basis for his request, Defendant expressed his lack of trust in Mr. Morell:

**The Defendant**:  Because I don't trust him, because he has lied to me.

**The Court**:  Well, how has he lied to you?

**The Defendant**:  He lied to me when he told me that he was going to reduce the felony from Arizona.  And he told me to ask my wife to stop what she was doing, and that's one of the most important things because that would reduce my time.  That would reduce my time.

[TR 80.]

**The Defendant**:  He hasn't said anything as far as what I would be saying court.  He hasn't gone over the arguments that I would have to state in court.  He didn't go up to see me.  He does not go up to see me, and the evidence is here.  He talks to me here because he does not come to see me in jail.

[TR 88.]

The Court then essentially restated what Defendant had already expressed in his own words:

**The Court**:  Look, I have to be honest with you, Mr. Cabrera.  It appears to me, and I make the following findings of fact, that the reason you want another lawyer is because you are unhappy with the deal that the government has offered.  It's not such an unusual situation to be unhappy with it.  I have this all the time, that people who are accused of

---

[3] Mr. Morell explained to the Court that he had explored the possibly of having Defendant's prior conviction reduced to a misdemeanor but that it was not feasible.  He had told Defendant that it was futile and a waste or their resources for Defendant's wife to pursue that option. [RT 72-73.]

Defendant made a number of allegations against Mr. Morell--such as that he made false promises, and failed to see him in custody, and lied to him–which were disputed by Mr. Morell and which are disbelieved by the United States.  Defendant's willingness to overstate his claims in an effort to obtain new counsel, in the opinion of the United States and in the full context of these proceedings, are not indicative of any mental defect, but instead reflect Defendant's strong motivation to avoid trial.

11CR3248-BTM

1   being deported aliens who come back into the United States feel that what the
2   government is offering them is unfair.

3   [TR 89.]

4       Accordingly, the Court denied Defendant's request for new counsel after recognizing
5   Defendant's true motivation was to put off his trial:

6       **The Court**:  [I]t seems to me that you don't want to go to trial, you're unhappy with
        what the government has offered, and that's why you want a new lawyer, but I'm not
7       going to appoint a lawyer for those reasons because Mr. Morell is a very competent
        and capable lawyer and he is very well trained in immigration law and I see no reason
8       that he can't provide effective assistance of counsel to you.

9       If you refuse to cooperate with him that's your decision.  But that would be a big
        mistake. All right.  So I think that you need to talk to him about the strategy in this case.
10      And he's been to visit you and if you just told him you want another lawyer and didn't
        want to talk about the case, then that's your decision.
11

12      But it seems to me that, we are not even on the eve of trial, we are on the day of trial, that
        you want another lawyer to delay the trial; you don't want to go to trial because, in your
13      opinion, these proceedings are unfair to you.

14      I respect your opinion and your view, but it's time to go to trial, and I think at this point
        your request for a new lawyer is just, frankly, a delaying tactic that wouldn't accomplish
15      anything.

16  [RT 90-91.]

17      Defendant made other statements during trial that suggest that he was able to understand the

18  nature and consequences of the proceedings against and assist in his defense, and also that his

19  underlying goal was to forestall the trial, or at least avoid attending it.  On the second day of trial,

20  Defendant again expressed concerns about his representation, and he again articulated them in a lucid,

21  coherent manner:

22      **The Defendant**: This is an abuse, what is being done here, violating my rights, forcing
        me to go to trial.  As I said in the beginning, if I had had good representation I would not
23      be here.  Maybe I would have signed off on a good plea, had this man not lied to me.
        Honestly, there is - - I have no reasons to lie.  If he told me - - he always told me that
24      everything was going very well.  I trusted in him and I thought that everything was going
        well, as he told me.  As my attorney, I trusted him, but after that, I cannot trust in him.
25      In addition, I have said things here that he denies having said.  So is this Alzheimer's
        that he is forgetting this?  He said yesterday, he said it in court also, that his memory was
26      not as good as the prosecutor's, so I need an attorney who can represent me, who has a
        good memory, can represent me.
27

28  [TR 314-15.]

This statement of the Defendant again suggests three things: (1) his biggest concern was getting what he considered to be a good plea; (2) he was frustrated with his counsel (likely stemming from his failure to get a better offer); and (3) he was paying careful attention to Mr. Morell's remarks in his opening statement, during which he had stated, in passing, "Ladies and gentlemen of the jury, unlike Mr. Williams, I don't have that great of a memory, so I have to read from notes." [TR 287.] Defendant's complaint to the Court suggest not that he was lacking full possession of his mental faculties, but that he was following along carefully with the court proceedings, and that his outbursts stemmed from his frustration with his compelled appearance in the trial.

The record further indicates Defendant's ability to assist in his defense. Over the course of the trial, Defendant continually expressed his desire to assist in his defense and he brought to court one of the briefs from his previously filed motion to dismiss the indictment.

> **The Defendant**: Yes, but I asked my attorney yesterday whether he was going to argue on my behalf about my defense and he told me that there was nothing, absolutely nothing. I mean, how could that be possible? I have arguments that can help my defense.
>
> **The Court**: Well, you certainly have arguments that can help you if you are - -
>
> **The Defendant**: I have the papers to prove.
> . . .
>
> **The Defendant**: I have the evidence at hand to show the members of the jury so they can see that I have never been deported.
>
> **The Court**: And what evidence is that?
>
> **The Defendant**: [to Mr. Morell] Here, you can show the judge. You can read this for him. Here, what is marked in red.
>
> **Mr. Morell**: This is page 2 of the motions, notice of motions and motions submitted by Federal Defenders, beginning with the paragraph, material to the instant motion, "The IJ advised the group of their right to voluntary departure . . . specifically the IJ explained," and here is what he underlines, "that voluntary departure allowed the respondent to leave voluntarily as opposed to being deported or removed; i.e., he explained that the benefit to this was that the individual could return to the United States legally but with a time restriction that applied to deportation or removal."

[TR 457, 461.]

And later:

> **The Defendant**: Why did we [not] have the audio that they alleged - - that they have pertaining to the alleged deportation? I told my attorney to bring that in today.
>
> **The Court**: Do you have that?

1      **Mr. Morell**: Not with me, your Honor.  It's in the car.

2      **The Court**: Well, you are free to offer that.  All right.  What else?

3      **The Defendant**: On page 10 of this motion it states that the government cannot show the
       elements required to proved deportation.

4

5   [TR 463.]

6          The Court advised Defendant that the written motion could not be submitted as evidence for the

7   jury, but he did make clear that Defendant was free to offer evidence that he paid the $7.00 required for

8   voluntary departure during his defense.  On the third day of trial, Defendant expressed his opinion about

9   how to handle the tape and other evidence of his prior removal hearing:

10     **The Defendant**: Please tell the judge that I would like to hear the other deportations of
       the other people that are there who are supposedly on that tape, because there is
11     supposedly 15 other people there.  You can only hear my voice, but supposedly there is
       other people there.  Because I would like to hear the other people that are there because
12     in the motion that I have pending, because there was first some people and then it was
       me, but before me there were other people.

13     **The Court**: I understand that, but I don't think - - do we have the other people?

14     **Mr. Askins**: We do not, your Honor.  The advisory was to everyone, but then as to - -
15     with regard to the individuals, we don't have that.

16     **The Court**: We don't have that.

17     **The Defendant**: I think that's manipulated.  I am not happy with this.  I think my rights
       are being violated.  And the things on the motions that Mr. Frank Morell is saying is not
18     what it says on that recording.

19  [TR 648-49.]

20         The important aspect of these exchanges is that not only was Defendant paying close attention

21  to the legal briefs filed in the case, but further that he very much engaged in his defense strategy during

22  the course of the trial.  These actions belie the claim that Defendant lacked the mental competence to

23  stand trial.  Evaluating all the evidence manifested by Defendant's speech and actions, a "reasonable

24  judge" would not have experienced substantial doubt with respect to Defendant's competency to stand

25  trial.  Kaplany v. Enomoto, 540 F.2d at 983.

26  //

27  //

28  //

**3.     The Court's Determination that Defendant Was Able to Understand the Proceedings and Assist in His Defense was Further Supported by Ample Evidence that Defendant's Unconventional Courtroom Conduct was Motivated by His Desire to Avoid Trial or at Least be Excused from Attending**

The record of the proceedings reflects not only Defendant's relatively sophisticated appreciation of the proceedings and competency to stand trial, but also that his actions were strategically motivated by a desire to delay the legal process.  His appearance at the beginning of the first two days of trial is instructive.  The morning of the first day of trial, Defendant appeared in full prison clothes rather than the street clothes provided by Mr. Morell.  In response to the Court's inquiry, it was revealed that, contrary to Defendant's assertion,  the pants and shirt that Mr. Morell provided were Defendant's requested size, but that he did not want to wear them because he did not want to participate in the trial.

**The Court**: Why is Mr. Cabrera-Perez not in street clothes?

**Mr. Morell**: Your honor, I do not know.  I delivered to the GEO institution a shirt, a size 16 shirt, and a pair of pants which may have been too big for him, but he tells me that nothing fits so he didn't wear it.

**The Court**: Yes, sir?

**The Defendant**: I told my attorney, I asked him if he brought me the shoes, the size 10 shoes and he said no, that they were going to give me, like, flip flops, and the pants were too big, and that was the reason why I didn't get dressed.

**Mr. Morell**: He has tennis shoes on, your Honor.

. . .

**The Court**: What size pants do you wear?

**The Defendant**: 36.

**Mr. Morell**: I brought a 36.  I wear a 36.

**The Court**: And what was wrong with the pants?

**The Defendant**: They were big.

**The Court**: Well, too long or big in the waist?

**The Defendant**: Too wide.

**Mr. Morell**: I wear a 36, your Honor.

[TR 65-67.]

//

1    After Defendant changed into street clothes,  the Court commented on the appropriate size of

2  the pants:

3        **The Court**: The defendant is here.  That doesn't look bad.  That doesn't look big on you
         at all.  I mean, it doesn't look big at all.  It looks like it fits actually.  I think Mr. Morell
4        was a good choice as a clothier.

5  [TR 92.]

6    Defendant wore the clothes for the rest of the day without issue.  The morning of the second day

7  of trial, however, the same delay tactic was repeated:

8        **Mr. Morell**: He's wearing jail garb.

9        **The Court**: What do you mean?

10        **Mr. Morell**: His pants are from the jail, your Honor.

11        **The Court**: I can't - -

12        **Mr. Morell**: And [h]is shirt is on the outside.

13        **The Court**: Right.  What happened?

14        . . .

15        **The Court**: We can't have him in jail clothes.

16        **The Defendant**: I refuse to put it on.

17        **The Court**: You refuse to put the civilian clothes on?

18        **The Defendant**: My clothing.  My clothing.  And this, too, but I had to put it on now,
         just now, because I was being forced to put it on.
19
         **The Court**: You're talking about the shirt.  So you were offered the opportunity?
20
         **The Defendant**: Yes.
21
         **The Court**: To put on what they call street clothes or civilian clothes?
22
         **The Defendant**: I was offered, offered that, but I said no.
23
         **The Court**: And why did you say no?
24
         **The Defendant**: Because I told you yesterday many times that I refuse to be here.  He
25       is asking me for respect, but he is not showing me any respect.  Because I didn't say a
         word, I didn't tell the jury anything yesterday, out of respect for him, and for the court.
26       And I am not being shown any respect.  My rights are being violated.

27        **The Court**: Sir, you have to be here.  I can't - - you can't waive your - -

28        **The Defendant**: Everybody I ask tells me that my rights are being violated.

1    **The Court**: Well, I don't know what rights you're talking about , but you don't have a
2    right not to be present at your trial.

3    [TR 300-302.]

4    Defendant made perfectly clear that he refused to don the civilian clothes provided to him.  His

5    refusal to do so stemmed from his resolve not to be present during his trial.

6    Defendant did not limit his obstructive tactics to refusing to wear the clothes provided by Mr.

7    Morell, however.  Just after the government had called its first witness on the second day of trial,

8    Defendant made his first outburst in front of the jury:

9    **The Defendant**: I can speak for my own, your Honor.  With all due respect, I'm being
     here forced.  They forced me to be here.  I don't want to be here.  They give me an
10   attorney.  I don't trust my attorney.  I told him too many times yesterday, I don't want
     to be here.  They force me to be here.  They violate my rights.  I can't understand how
11   this is going to be, you know what I'm saying.  I don't understand how this can be.  They
     forced me.  I didn't ask for a trial.  I don't trust my attorney.  That's all I can say.  There
12   is nothing the jury can say or do for me, that's all I can say, because this is not right.  I
     never asked for this.  They told me - - my attorney told me I'm going to lose this trial.
13

14   [TR 319.]

15   And again on the final day of trial, after Mr. Morell had given his closing argument, Defendant made

16   further outbursts to the jury that displayed his utter frustration with the proceedings and anger at the

17   process, yet cutting to the heart of the matter as to his motivation:

18   **The Defendant**: Your Honor, I would like to speak with the jury if you would let me.

19   **The Court**: No, your lawyer speaks to the jury.

20   **The Defendant**: Hey, listen, this is my trial.  I'm here, you know, I'm here with - -

21   **The Court**: Your lawyer will - -

22   **The Defendant**: You forced me to be here and I would like to speak for my own.  I need
     an opportunity to talk about all this situation, all the things.  I want to say nothing but the
23   truth, if you let me talk to the jury, please.

24   **The Court**: Sir - -

25   **The Defendant**: Your Honor, please, this is my right.  I need to speak with the jury,
     please.  They need to know.  The government talk about me; right?  They talk about all
26   the bad things that I do, but then -

27   **The Court**: Sir, please.

28   **The Defendant**: No, your Honor, you need to let me talk.

1    **The Court**: Just a second.  Ladies and gentlemen, could I ask the jury [to] go to the jury
     room.

2
     [TR 742-43.]<u>4/</u>

3
     . . .

4
5    **The Defendant**: All I ask is to give me, get me a good plea.  That's it.  I already gave
     four years of my life, and they try to give me five and plus probation and then a trial
     because I don't want to sign the plea.  I don't bring any drugs.  I don't commit any

6    crime.  People who bring in drugs into the United States get one year, two years.  This
     is ridiculous.  It is not right.

7
8    [TR 756-57.]

9    Throughout the course of the trial, Defendant's words and actions displayed utter aversion to

10   the trial process.  The substance of his communications on the record revealed the motivations for his

11   actions: he was attempting to obstruct the trial due to what he perceived was an unfavorable plea offer

12   from the Government, and what he believed was an inequitable penalty for attempting to enter the

13   United States.  Although Defendant argues that he should have been granted a competency hearing, and

14   that the Court erred by not doing so, the record reflects that Defendant was not only competent, but that

15   he was actively involved in the case, that he had a sophisticated appreciation for the subject matter, and

16   that he was strategically motivated to delay the trial in any way possible.

17                                                     **IV.**

18                                              **CONCLUSION**

19   For the foregoing reasons, the United States respectfully requests that Defendant's motion be

20   denied.

21

22   DATED:  April 16, 2012                          Respectfully Submitted,

23                                                   LAURA E. DUFFY
                                                     United States Attorney

24
                                                     /s/ Warren J. Williams
25                                                   WARREN J. WILLIAMS
                                                     Special Assistant U.S. Attorney

26

27   _____

28        <u>4/</u> Defendant repeatedly told the Court that he "had" to speak to the jury, but contrary to
     Defendant's assertion at page 3, ll 8-9 of his motion for new trial, he did not claim to be "unable to stop
     himself" from making outbursts in front of the jury. [RT 743-750, 756-759.]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 11CR3248-BTM
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀**CERTIFICATE OF SERVICE**
⠀⠀⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ARMANDO CABRERA PEREZ⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

⠀⠀⠀⠀IT IS HEREBY CERTIFIED that:

⠀⠀⠀⠀I, WARREN J. WILLIAMS, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

⠀⠀⠀⠀I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendant's Motion for New Trial on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

⠀⠀⠀⠀Debra A. DiIorio, Esq.

⠀⠀⠀⠀I declare under penalty of perjury that the foregoing is true and correct.

⠀⠀⠀⠀Executed on April 16, 2012.

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀/s/ Warren J. Williams
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀WARREN J. WILLIAMS